***E-FILED 8/27/07***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| AGNES SUEVER, et al., | NO. C 03-00156 RS |
| Plaintiffs, | **ORDER DENYING APPLICATION FOR TEMPORARY RESTRAINING ORDER** |
| v. | |
| KATHLEEN CONNELL, et al., | |
| Defendants. | |

On August 24, 2005, plaintiffs filed an application for a temporary restraining order seeking to prohibit the State Controller from communicating with any putative class members until and unless the form and substance of the communication is first reviewed and approved by the Court and plaintiffs have had the opportunity to state any objections. For the reasons explained below, the application is DENIED.

A. <u>Recent Developments</u>[1]

On August 23, 2007, the Controller held a press conference in which he apparently announced a "plan" that purportedly would address at least some of the concerns raised by plaintiffs in this action as to how the State of California has implemented and administered its Unclaimed

---

[1] The factual background of this action has been described in prior orders and in a Ninth Circuit opinion in this case and will not be repeated here.

1

Property Law ("UPL") in recent years. According to plaintiffs, the "plan" comprises sending out letters to thousands of putative class members and launching a new website. Plaintiffs contend that both the letters and the website are "replete" with "misinformation and omissions."

### B. Ninth Circuit Rulings

The Ninth Circuit has issued one opinion in this case, *see Suever v. Connell*, 439 F.3d 1142 (9th Cir. 2006), and two opinions in a similar case brought by the same plaintiffs' counsel in the Eastern District of California. *See Taylor v. Westley*, 402 F.3d 924, 933 (9th Cir. 2005) (*Taylor I*) and *Taylor v. Westley*, 488 F.3d 1197 (9th Cir. 2007) ("*Taylor II*"). In response to the mandate of *Taylor II*, the Eastern District of California has entered a preliminary injunction that effectively precludes California from taking possession of *any* property under the purported authority of the UPL.

The present Controller was elected after the first two of these decisions issued. The new Controller has now publicly stated his intent to restore the "original intent" of the UPL through legislative action and policy changes in his office.

Nevertheless, the Court understands and recognizes that in *this* action, as recently as in the opposition to plaintiffs' motion for partial summary judgment now under submission, the Controller has continued to argue that California's *existing* UPL and the practices thereunder (currently enjoined), suffer from *no* Constitutional infirmities. Plaintiffs' obvious frustration with the apparent inability of the Controller to "get it" is therefore understandable.

The Controller, however, is technically correct that to date, the Ninth Circuit has never issued a ruling *on the merits*. Both *Suerver* and *Taylor I* involved motions to dismiss, where plaintiffs' allegations were to be presumed true. *Taylor II* implicated only the *likelihood* of success on the merits, based on the then-existing factual record. As a consequence, the Controller had, has, and will have, every right to argue that the *proven* facts establish no constitutional violation. Indeed, plaintiffs rely on the fact that there has been no ruling on the merits to support their pending motion for partial summary judgment.

1   That said, at least some of the arguments presented by the Controller in opposition to the
2   motion for partial summary judgment appear to challenge whether or not *Suever*, *Taylor I*, and
3   *Taylor II* were correctly decided.[2] To the extent the Controller is so arguing, he must present his
4   case to a higher court, not the trial court. The Controller may be correct that *if* the facts as proven
5   are materially different from the facts upon which *Suerver, Taylor I ,*and *Taylor II* were decided,
6   then none of those cases would be "controlling." Plaintiffs may rest assured, though, that to the
7   extent they prove, as a matter of undisputed fact or at trial, that the facts are not materially different
8   than those considered by the Ninth Circuit, the Court will endeavor faithfully to apply the holdings
9   of the Ninth Circuit in *Suerver*, *Taylor I*, and *Taylor II*.

C.  The Communications

Plaintiffs' application for a temporary restraining order rests largely on their contention that certain statements in the notices the controller now intends to send out, or on the new website, still do not conform to what plaintiffs contend the Constitution, and the Ninth Circuit decisions in *Suerver*, *Taylor I*, and *Taylor II,* require. It appears that at least some of the assertions made in the challenged communications may not be consistent with either the current state of affairs or what the Ninth Circuit has suggested the Controller likely will be required to do in the event plaintiffs prove their case. For example, the communications apparently state that materials taken from safe deposit boxes will be destroyed within 90 days, without mentioning either the existing injunction or the Controller's pledge predating that injunction that he would hold any property seized for at least 180 days. Similarly, the communications purportedly assert that claimants to property that has been sold will be entitled to nothing more than the sales proceeds, which directly implicates an issue still in controversy in this litigation.

---

[2] Those arguments remain under submission, and will be addressed, if at all, in the Court's ruling on the summary judgment motion. The comments in this order provide relevant background to the present decision, but neither prejudge the issues presented in the summary judgment motion nor constrain any order thereon.

3

### D. Basis for a Restraining Order

The temporary restraining order plaintiffs seek is unlike the prototypical TRO that provides preliminary relief on the same issues raised in a plaintiff's complaint. Thus, the ordinary calculus of "likelihood of success on the merits" does not apply in the usual way. At the same time, a Court maintains inherent power to enjoin conduct that would interfere with its proceedings. Nevertheless, plaintiffs have not shown that a TRO is warranted here. Even assuming it might be appropriate to constrain a defendant's communications with prospective class members prior to class certification under some circumstances, the only basis for doing so would be the potential that, as plaintiffs put it, the communications might "improperly interfere with the orderly completion of this litigation." See also *Tedesco v. Mishkin*, 629 F. Supp. 1474 (S.D.N.Y. 1986) (injunction entered against perjurious communications by attorney to class members aimed at discouraging class members from participating or encouraging them to "opt out"); *Haffer v. Temple Univ.*, 115 F.R.D. 506 (E.D. Pa. 1987) (defendant and its counsel enjoined from actively discouraging class members from cooperating with plaintiffs' counsel).

Given plaintiffs' view that the Controller has not taken seriously the admonishments of the Ninth Circuit, it is understandable that they take issue with some of the statements in, or omissions from, the communications in issue. There is nothing here, however, that even remotely approaches the kind of conduct enjoined in *Tedesco* or *Haffer*, and plaintiffs have made no showing that the communications will significantly impair their ability to proceed in this action. As an initial matter, whether or not the Controller accurately describes how the UPL operates or may someday operate, is of little moment given that he is *enjoined* from taking any property until he has satisfied at least the Eastern District of California that the law and procedures pass constitutional muster. In other words, the Controller may say whatever he wants as to what the law requires or does not require without affecting plaintiffs' rights, whatever they may be. Plaintiffs have invoked the jurisdiction of the federal courts, and it is those courts, not the Controller, who will ultimately decide what is constitutionally required.

Even as to matters implicated in this action that are outside the scope of the Eastern District's

4

1  injunction, such as how *existing* claims are processed and paid and whether interest should be
2  included, plaintiffs have failed to show how the Controller's communications will interfere with
3  their prosecution of this action.  Again, it will be the Courts, not the Controller, that ultimately
4  decide what is required, and nothing the Controller may say or fail to say  in these communications
5  will change that.

6  Finally, Plaintiffs suggest that the Controller may be seeking releases from potential class
7  members in exchange for paying claims.  Even if that is so, it seems unlikely that any such purported
8  releases would be sufficient to bar such persons from pursuing relief on constitutional grounds such
9  as are alleged in this action.   Accordingly, plaintiffs have not established a basis for entering a
10 temporary restraining order at this juncture.

13 IT IS SO ORDERED.

14 Dated: August 27, 2007

/s/ Richard Seeborg
RICHARD SEEBORG
United States Magistrate Judge

ORDER DENYING TRO
C 03-00156 RS

5

1  **THIS IS TO CERTIFY THAT NOTICE OF THIS ORDER HAS BEEN GIVEN TO:**

2  James C. Harrison     jharrison@rjp.com, kkrogseng@rjp.com

3  Robin Bradle Johansen     rjohansen@rjp.com, kkrogseng@rjp.com

4  William Wayne Palmer     wmwpalmer@aol.com, dculhane@dim.com

5  Margaret R. Prinzing     mprinzing@rjp.com, lfien@rjp.com

6  Thomas Andrew Willis     twillis@rjp.com, kkrogseng@rjp.com

8  Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the Court's CM/ECF program.

10  **Dated: 8/27/07**                                            **Chamber of Judge Richard Seeborg**

                                                                  **By:         /s/ BAK**