*E-Filed 10/12/2007*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| AGNES SUEVER, et al.,<br><br>    Plaintiffs,<br>v.<br>KATHLEEN CONNELL, et al.,<br><br>    Defendants. | NO. C 03-00156 RS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

## I. INTRODUCTION

In this action and in a similar action pending in the Eastern District of California, plaintiffs have obtained multiple rulings from the Ninth Circuit Court of Appeals which, taken together, suggest that (1) if plaintiffs prove the facts they have alleged, they will have established that California's Unclaimed Property Law ("UPL") is constitutionally deficient, and (2) plaintiffs have already shown a likelihood of success on the merits. *See Suever v. Connell*, 439 F.3d 1142 (9th Cir. 2006); *Taylor v. Westley*, 402 F.3d 924, 933 (9th Cir. 2005) (*Taylor I*); *Taylor v. Westley*, 488 F.3d 1197 (9th Cir. 2007) ("*Taylor II*"). Additionally, in response to the mandate of *Taylor II*, the Eastern District of California has entered a preliminary injunction that effectively precludes California from taking possession of any property under the purported authority of the UPL.

Plaintiffs here, however, recognize that none of those prior rulings are "on the merits." By their present motion, therefore, plaintiffs seek a final determination on certain aspects of their

1

claims. For the reasons explained below, the motion will be denied in part, and granted in part.

## II. STANDARDS

Summary judgment is proper "if the pleadings and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323-324 (1986).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. If it meets this burden, the moving party is then entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of his case with respect to which he bears the burden of proof at trial. *Id.* at 322-23.

The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party cannot defeat the moving party's properly supported motion for summary judgment simply by alleging some factual dispute between the parties. To preclude the entry of summary judgment, the non-moving party must bring forth material facts, i.e., "facts that might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588 (1986).

The court must draw all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded particular evidence. *Masson v. New Yorker Magazine, Inc.*, 111 S.Ct. 2419, 2434-35 (1991) (citing *Anderson*, 477 U.S. at 255); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588 (1986); *T.W. Elec. Service v. Pacific Elec.*

2

1 *Contractors*, 809 F.2d 626, 630 (9th Cir. 1987). It is the court's responsibility "to determine
2 whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background
3 or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor
4 based on that evidence." *T.W. Elec. Service*, 809 F.2d at 631. "[S]ummary judgment will not lie if
5 the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury
6 could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. However, "[w]here the
7 record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there
8 is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

### III. DISCUSSION

A. <u>Availability of Declaratory Relief</u>

As an initial matter, the parties dispute the extent to which plaintiffs can pursue claims for declaratory relief. The Controller argues that this Court's ruling in 2006 on defendants' motion for judgment on the pleadings had the effect of dismissing all claims for relief except "claims for return of property and other prospective relief" and that therefore plaintiffs' claims for declaratory relief have already been dismissed. Because of the way the complaint was pleaded, however, the 2006 order expressly declined to find that "any of the particular numbered 'claims for relief' are necessarily wholly barred." November 13, 2006 Order at 5:28-6:1.[1] It may be true that, consistent with the Eleventh Amendment, the Ninth Circuit's ruling in this case, and the ruling on the motion for judgment on the pleadings, plaintiffs are not entitled to *all* of the declaratory relief sought in the complaint, but that does not mean that declaratory relief is wholly unavailable to them. For example, a finding and declaration that the Controller is engaging in unconstitutional conduct could serve as a predicate for prospective injunctive relief. Similarly, in the context of adjudicating questions of whether the Controller is holding property belonging to plaintiffs, it may well be

---

[1] Although that remark was made in the particular context of declining to determine which, if any, of the numbered claims for relief were based solely on state law, nothing else in the order purported to dismiss specific numbered claims for relief.

3

1  appropriate to inquire into the propriety of past conduct and to enter a declaration pertaining to such
2  conduct. Thus, it is not correct to say that declaratory relief is no longer available to plaintiffs by
3  virtue of any prior ruling.

### B. Notice Provisions and Practices Under the UPL

The first prong of plaintiffs' motion seeks a declaration on the merits that California's existing UPL and the Controller's practices thereunder do not comport with due process because owners of property are not provided constitutionally adequate notice prior to the time the Controller takes possession of the property under color of the UPL. Relying largely on the sworn declaration of Robert Huarte, then-Chief of the Division of Collections for the Controller[2], and on the Ninth Circuit's decisions in *Suever*, *Taylor I*, and *Taylor II*, plaintiffs contend these issues can be decided in their favor as a matter of law, and that they should be granted a *permanent* injunction.

Much of the Controller's argument in opposition to this prong of the motion is devoted to attempting to show that *Suever*, *Taylor I*, and *Taylor II* are not controlling. As the Court observed in its order denying plaintiffs' application for a temporary restraining order, the controller is technically correct that those decisions were based either on allegations or on a preliminary evidentiary record and therefore do not *necessarily* dictate what the outcome will be on the merits. See August 27, 2007 Order at 2:21-25. The Controller does point to a few factual matters he contends the Ninth Circuit considered that, in his view, are not supported by the present record or are completely false. Nevertheless, the Controller appears not fully to appreciate that the core holdings of the Ninth Circuit opinions rest largely on facts which he has *not* disputed with respect to the structure and operation of the UPL prior to the injunction issued out of the Eastern District of California. As one particular example, *Taylor II* plainly stated that constitutional due process is not satisfied either by notice (regardless of its form) given *after* the state has "disturb[ed] a person's ownership of his property," or by notice given by third parties rather than by the state itself. 488

---

[2] The declaration was filed in 2006 in a state court action also challenging the UPL and the Controller's practices.

4

1 F.3d at 1201. The Controller does not contend that, under his practices prior to the injunction, the
2 state itself gave notice to owners prior to taking possession of property under color of the UPL.
3 Thus, while none of the prior decisions have been "on the merits" *per se*, the Controller's efforts to
4 dismiss them as simply inapplicable to summary judgment is misdirected.[3]

5 That said, it does not follow that plaintiffs are entitled to the relief they seek in this prong of
6 their motion. *Taylor I* made clear that the Eleventh Amendment bars declaratory relief claims that
7 *effectively* are "retroactive requests for money" and that are "in practical effect indistinguishable in
8 many aspects from an award of damages against the State." *Taylor I*, 402 F.3d at 935 (quoting
9 *Edelman v. Jordan*, 415 U.S. 651, 668 (1974)); see also *Suever*, 439 F. 3d at 1148. Putting aside for
10 a moment plaintiffs' claims for return of property that they contend belongs to them, this Court's
11 jurisdiction otherwise lies only to enjoin *future* unconstitutional conduct. See *Taylor I*, 402 F.3d at
12 935 ("If these facts turn out to be true . . . the district court could declare the notice practices of the
13 Controller unconstitutional and enjoin the Controller to conform to . . . whatever . . . standards were
14 determined to be appropriate.") At this juncture, even assuming that the facts previously considered
15 by the Ninth Circuit in any of its pertinent rulings "turned out to be true" *before* the Eastern District
16 entered its injunction, those facts are undisputedly *not* reflective of the current state of affairs.

17 As matters now stand, the Controller is enjoined from taking possession of *any* property
18 under the purported authority of the UPL.[4] Additionally, the Controller by virtue of the Eastern

---

[3] The Controller also spends a substantial portion of its brief arguing that *Taylor II* (and to a lesser extent *Taylor I* and *Suever*) were wrongly decided. In particular, the Controller argues the Ninth Circuit misunderstood and misapplied the holding of *Jones v. Flowers*, 547 U.S. 220 (2006). As noted in the Court's August 27, 2007 order, such arguments are properly addressed only to the Ninth Circuit or the Supreme Court, not to this Court.

[4] After this motion was under submission, the Controller filed supplemental briefing asserting, among other things, that California Senate Bill 86 has now been passed and signed into law and that its amendments to the UPL moot at least some of the issues presented in the motion. The Controller's filing contravenes Local Civil Rule 7-3 (d), and no part of this Order is based on the facts or arguments presented therein. Nevertheless, as pointed out in plaintiffs' objections to the Controller's supplemental filing, the Controller's underlying argument that he was seeking legislative amendments to the UPL was already part of the record. There is no dispute that the Controller now has a pending motion to dissolve the preliminary injunction in the Eastern District based on the passage of SB 86, but neither the pendency of that motion nor its potential success or failure affects the analysis of this motion for summary judgment.

5

1  District order will not be permitted to take possession of property under the UPL until and unless he
2  demonstrates to the satisfaction of that court that he is complying, and will continue to comply, with
3  all constitutional requirements.

4  Plaintiffs point to the positions taken by the Controller in opposition to this motion as being
5  at least some indication that the Controller should not be trusted to comply with his constitutional
6  obligations in the absence of a permanent injunction. Plaintiffs have not shown, however, that there
7  is any *reasonable* basis to believe that either: (1) the Eastern District's injunction will be lifted
8  without adequate assurances that the Controller intends to, and will, abide by the Constitution; or (2)
9  after any dissolution of the temporary injunction in the Eastern District, the Controller would likely
10 revert to unconstitutional practices.

11 Plaintiffs may be correct that ordinarily the existence of a preliminary injunction is no bar to
12 entry of a permanent injunction. Certainly, to the extent the Eastern District of California concludes
13 that it should make any aspect of its injunction permanent it will be entitled to do so. It would be
14 inappropriate for *this* Court to enter a permanent injunction at this point, however, because there is
15 no ongoing unlawful conduct, nor a likelihood of future unlawful conduct, to be enjoined. For
16 similar reasons, it is neither necessary nor appropriate to enter a declaration that the controller's *past*
17 practices were unconstitutional. While, as explained above, declaratory relief might be appropriate
18 as a predicate to an injunction, a declaration that the Controller's past practices regarding notice
19 were unconstitutional would, standing alone, serve no legitimate purpose. Accordingly, this portion
20 of plaintiffs' motion will be denied.

22 C. Scope of the UPL

23 Although plaintiffs' moving papers are not entirely clear as to the relief they seek, they
24 include substantial argument that the Controller has taken possession of property "outside the scope"
25 of the UPL. The Controller's opposition assumes that plaintiffs are seeking a declaration to that
26 effect and opposes the request. Plaintiffs' opening brief cites passages from *Suever* and *Taylor I* in
27 support of their argument that property outside the scope of the UPL has in fact been taken by the

6

1  Controller (opening Brief at 19:22-20:5; 22:3-10), but as noted, those decisions were based on the
2  requisite pleading *assumption* that the allegations of the complaints were true.  Plaintiffs have also
3  argued there is evidence that the procedures under which the Controller has taken possession of
4  purportedly "unclaimed" property have been insufficient to ensure that all such property truly meets
5  the criteria of the UPL.

6  Plaintiffs point to circumstances under which a trier of fact might very well ultimately
7  conclude the Controller was not entitled to take possession of property, because either the holder or
8  the Controller, or both, could have determined where the property owner could be contacted.
9  Additionally, it is logical to assume that to the extent inadequate notice was given to property
10 owners, the likelihood increased that property would be taken where the owners were not truly "lost"
11 within the meaning of the UPL.

12 The mere possibility that a holder or the Controller could have found a current address for a
13 property owner through different or additional efforts, however, does not in and of itself mean that
14 property necessarily was taken "outside the scope" of the UPL. To the extent plaintiffs are
15 requesting a declaration to that effect, they have failed to meet their burden to show as a matter of
16 undisputed fact that seizures of property outside the scope of the UPL have occurred.

18 D.  Interest

19 Plaintiffs seek a declaration that the provisions of the UPL in effect at the time they filed
20 their motion were unconstitutional to the extent those provisions did not provide for the payment of
21 interest on monies returned to their owners.  Although the UPL has apparently now been amended to
22 restore claimants' entitlement to interest, the issue is neither moot nor subject to the concern that
23 there is no likelihood of future improper conduct to enjoin.  The Controller does not suggest the
24 amendments to the UPL will result in payments of interest to persons who were denied interest
25 under prior versions of the statute.  Plaintiffs' contention is that such interest was their property and
26 remains their property.  *Suever* made clear that, "[t]he Eleventh Amendment does not bar the class's
27 claims insofar as the claims request the return of the class's property." *Suever*, 439 F.3d at 1146-47.

7

1  Thus, the potential entitlement of plaintiffs who previously were denied interest to recover such
2  interest remains an adjudicatable issue.[5]

3  Plaintiffs' theory is simple: when the Controller takes *possession* of property under color of
4  the UPL, *ownership* of such property at all times remains with the original owner.[6] Under long
5  established common law principles, "interest shall follow the principal, as the shadow the body."
6  *Beckford v. Tobin*, 1 Ves. 308, 310, 27 Eng. Rep. 1049, 1051 (Ch. 1749) (as quoted in *Leider v.*
7  *United States*, 301 F.3d 1290, 1296 (Fed. Cir. 2002). Thus, plaintiffs contend, interest on property
8  taken by the Controller under color of the UPL (or on the proceeds from liquidation of such
9  property) is just as much the property of the original owners as the principal. See also *Webb's*
10 *Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 162 (1980) ("The usual and general rule is
11 that any interest on an interpleaded and deposited fund follows the principal and is to be allocated to
12 those who are ultimately to be the owners of that principal.").

13 Plaintiffs characterize the failure to pay interest as a "takings," without "just compensation"
14 as required by the Takings Clause of the Constitution. As noted, plaintiffs' basic theory is that the
15 interest itself is *their property*, just as is the principal. The Ninth Circuit has already held that
16 plaintiffs are entitled to pursue claims for return of their own property *independently* of the Takings
17 Clause. *Taylor I*, 402 F.3d at 936. ("[w]e need not decide the issue of sovereign immunity in the
18 context of a takings claim, since we have already decided that plaintiffs' property has not been taken
19 at all, but has merely been held in trust for them by the Controller.").

20 The difference between principal and interest, however, is that the UPL has *never* purported

---

[5] At oral argument, the Controller suggested that none of the *named* plaintiffs were denied interest when their claims were paid, an argument not made in the opposition brief. As noted above, however, some plaintiffs' claims were denied, and they are litigating the validity of those denials in this action. Additionally, it appears that at least one plaintiff was not paid any interest at all. Although plaintiffs have the burden of establishing they are entitled to relief as a matter of law and undisputed fact, the issue of whether any plaintiff still has a claim for interest is only a potential affirmative defense and the Controller has not met his burden to show that the Court may not properly consider whether interest is constitutionally mandated.

[6] Even where the property is not cash, or a cash equivalent, and the Controller subsequently liquidates the property, there is no real dispute that the *proceeds* from the liquidation remain the property of the original owner.

8

1    to authorize the Controller to take permanent ownership of principal, but for a period of time, the

2    UPL *did* expressly provide that "[n]o interest shall be payable on any claim . . . ." Cal. Code Civ. P

3    § 1540 (c). The question, therefore, is whether California could constitutionally determine that

4    interest on property would permanently "escheat"[7] to the state, even where the principal did not.

5        In support of his argument that the state was entitled to withhold interest, the Controller cites

6    various non-binding decisions from other states that have involved similar challenges to those states'

7    unclaimed property laws or procedures. In particular, the Controller relies on *Sogg v. Ohio Dept. of*

8    *Commerce*, 2007 WL 1821306 (Ohio App. 2007), in which an Ohio state court found that Ohio

9    lawfully amended its unclaimed property statute to preclude the payment of interest on claims for the

10   return of property, because "unclaimed property is the equivalent of abandoned property" and "the

11   state's retention of the interest earned on unclaimed funds while those funds are in the custody and

12   control of the state, due to owner's failure to take any action with respect to the property for the

13   statutorily prescribed period of time, does not constitute a taking that requires compensation." 2007

14   WL 1821306 at * 10. The *Sogg* court recognized that where a state enacts a *custodial* system for

15   unclaimed property, rather than a "true escheat" system, title to the property never passes to the

16   state. *Id.* The court also recognized that under long-established principles of law, "interest follows

17   principal" and therefore the owners of the property ordinarily would be entitled to interest when they

18   reclaimed their property. *Id.* at * 3. Nonetheless, the *Sogg* court concluded that Ohio could, in

19   effect, choose to treat *interest* as *permanently* escheated to the state, even though the balance of its

20   unclaimed property law established only a custodial system.

21       That conclusion is simply not viable here given the Ninth Circuit's pronouncements

22   regarding the UPL. Under the UPL, property *can* permanently escheat to the state under certain

23   circumstances not implicated by the facts of this case. In *Taylor I*, however, the court observed that,

24   "[t]he Controller's obligation to order transfer from the Treasurer, if money was deposited in the

---

[7] Historically in the common law, "escheat" applied to real property and the analogous doctrine of *bona vacantia* applied to personal property. See *Anderson Nat. Bank v. Luckett* 321 U.S. 233, 240 (1944). For convenience, the term "escheat" will be used exclusively hereinafter.

9

general fund but is subsequently found not to be permanently escheated, plainly establishes that the trust continues, even after the Controller has transferred the money to the general fund. Thus the money, even if in the general fund, is not held free and clear by the State of California, but subject to retransfer if the property is later found not to be permanently escheated." *Taylor I*, *supra*, 402 F.3d at 931. The court also stated, "The State of California's sovereign immunity applies to the state's money. Money that the state holds in custody for the benefit of private individuals is not the state's money" *Id.* at 932.

Although the Ninth Circuit's decisions in *Suever*, *Taylor I*, and *Taylor II* are not conclusive to the extent the proven *facts* may differ from those considered in those opinions, this Court *is* bound by the explication of the *law* set out therein. California's UPL does not purport to authorize the state to take title to property except under circumstances not present here. Even assuming a state constitutionally could, with proper due process notice, withhold interest under the common law doctrine of "true" escheat, while holding the principal only in a custodial system, that is not what California did here. Rather, while purporting to take property only as a custodian, the state appropriated to itself the use and value of that property. It is as if California claimed to be holding a tree in custody for its owner but insisted on pruning back and keeping all branches that grew in the interim. Because the principle itself at all times remained the property of private individuals and not the state, so too did the interest. See also, *Canel v. Topinka,* 818 N.E.2d 311 (Ill. Sup. 2004) (finding takings clause violation where Illinois unclaimed property law did not provide for the return of dividends earned on stock taken into state custody). For similar reasons, none of the other cases cited by the Controller are persuasive authority here.

Furthermore, contrary to the Controller's argument, it does not matter that property taken under color of the UPL (or proceeds therefrom) may not have been deposited in interest-bearing accounts.[8] Even if, as it appears has been the case, the state simply *spent* the money, it had the use

---

[8] The order on defendants' motion for judgment on the pleadings suggested that resolution of the interest issue possibly would turn on whether the property was interest-bearing before or after it was taken into custody by the state, or both.  As this order reflects, the Court has now concluded that to be irrelevant.

1 of those funds, which economically is equivalent to earning interest. Accordingly, plaintiffs' motion
2 is granted to the extent they seek a declaration that the Controller is obligated to return interest to
3 persons who reclaim property taken into state custody under the color of the UPL.

### E. Claim Procedures

Plaintiffs' moving papers assert they seek relief on two basic issues, but in subsequent filings and at the hearing they clarified that three separate matters were being raised. In addition to seeking rulings on notice and on interest as discussed above, plaintiffs request the Court to order the Controller to begin the process of promulgating regulations that will govern how persons may present and "perfect" a claim under the UPL.[9] Plaintiffs contend that the Controller has failed to comply with his obligations under the California Government Code and its Administrative Procedures Act ("APA") to adopt such regulations.

Recognizing that "where the relief is premised solely on the State's compliance with state law," the relief is "clearly barred by the Eleventh Amendment," *Suever*, 439 F.3d at 1148, plaintiffs attempt to argue that the Controller's alleged failure to comply with the Government Code and the APA has resulted in a violation of their *federal* due process rights. At least at this juncture, however, plaintiffs have not shown how that is so. Plaintiffs appear to be arguing that certain of the named plaintiffs have been aggrieved because the Controller has told them that he does not have any record of holding their property, but they believe their property was in fact taken into the Controller's custody under color of the UPL.

Why plaintiffs believe the lack of regulations promulgated under the APA gives rise to a federal due process violation in such circumstances is unclear. Plaintiffs do not deny that they were able to make a claim for their property. Plaintiffs do not dispute that the Controller denied that claim. Plaintiffs have filed this action, seeking to prove, among other things, that the Controller

---

[9] At the hearing, plaintiffs acknowledged that this request for relief was not consistent with their characterization of their motion as seeking only legal determinations of liability, with remedies to be addressed later.

11

*does* have possession of property belonging to them. The Controller has not argued that plaintiffs failed to exhaust administrative remedies. They will either prove to the satisfaction of a trier of fact that the Controller took possession of their property or they will not. Thus, plaintiffs were able to make a claim, and are able to seek redress in court for the denial of that claim. Even assuming the Controller is violating state law by not promulgating different or additional regulations governing how claims are to be made and processed, no federal constitutional violation is apparent on these facts.

## IV. CONCLUSION

Plaintiffs' motion for partial summary judgment is granted to the extent set forth above and is otherwise denied.

IT IS SO ORDERED.

Dated: October 12, 2007

RICHARD SEEBORG
United States Magistrate Judge

ORDER
C 03-00156 RS

12