1
2
3                                              **\*E-FILED 4/1/08\***
4
5
6
7                    IN THE UNITED STATES DISTRICT COURT
8                    FOR THE NORTHERN DISTRICT OF CALIFORNIA
9                                SAN JOSE DIVISION
10
11

United States District Court
For the Northern District of California

12    AGNES SUEVER, et al.,                        NO. C 03-00156 RS

13                          Plaintiffs,            **ORDER CERTIFYING ISSUE
                                                   FOR INTERLOCUTORY**
14         v.                                      **APPEAL, AND DECIDING
                                                   OTHER PENDING MOTIONS**
15    KATHLEEN CONNELL, et al.,

16                          Defendants.

17    _____/

18

19                              I. INTRODUCTION

20         Plaintiffs in this action challenge the manner in which the State of California has

21    administered its Unclaimed Property Law ("UPL").  Now pending are: (1) The Controller's[1] motion

22    to certify for interlocutory appeal a prior order that concludes the state is constitutionally required to

23    pay interest when it returns property to owners; (2) Plaintiffs' motion to amend the class definitions,

24    their renewed motion to certify a class, and their request for entry of a permanent injunction; (3)

25    The Controller's motion for partial summary judgment; (4) Plaintiffs' motion in response thereto for

26    _____

27         [1]  At different times in this action different individuals have served as the Controller of the
      State of California and additional individuals have been named as defendants as well.  The status of
28    some of these individual defendants is discussed below.  For convenience, this Order will refer to
      defendants simply as "the Controller."

                                              1

a continuance under Rule 56 (f); (5) Plaintiffs' motion to compel further discovery responses, and (6) The Controller's motion for a protective order and for sanctions arising from his contention that plaintiffs have improperly obtained and used privileged documents.

For the reasons set out below, the motion to certify the interest order for interlocutory appeal will be granted, plaintiffs' motion to amend the class definition will be granted, the Controller's motion for partial summary judgment will be granted in part and denied in part, and the parties will be ordered to engage in further meet and confer negotiations regarding their discovery disputes.  The motions will in all other respects be denied.

## II. BACKGROUND

The general factual background of this action has been discussed at length in the Court's prior orders, as well as in the Ninth Circuit's opinion in this action, and will not be repeated here.  A brief synopsis, however, of the prior substantive orders issued in this action provides useful context for consideration of many of the motions addressed below.

• In November of 2003, this Court granted the Controller's motion to dismiss this action, without leave to amend, based on the determination that the Eleventh Amendment to the United States Constitution barred the claims alleged.  On appeal, the Ninth Circuit reversed the resulting judgment entered in favor of the Controller.  See *Suever v. Connell*, 439 F.3d 1142 (9th Cir. 2006). While the Ninth Circuit gave examples of some claims that could go forward and others that "were clearly barred," it elected not to parse all of the averments of plaintiffs' complaint or to opine on every potential claim.

• After remand, the Controller moved for judgment on the pleadings, asking the Court to answer the questions left open by the Ninth Circuit opinion as to which claims could go forward and which could not.   By order issued in November of 2006, the Court granted that motion in part.  The order was intended to reach as many of the issues as possible in the procedural context of a motion for judgment on the pleadings, and to provide a more generalized framework for understanding what

the Court saw as remaining to be decided.  With respect to some important details, unfortunately, the parties continued to hold diametrically opposed views as to the legal consequences flowing both from that order and from the Ninth Circuit opinion.

• Plaintiffs subsequently moved for partial summary judgment on several issues, largely based on the argument that it is beyond factual dispute that the state engaged in conduct the Ninth Circuit had previously declared would be unconstitutional.  See  *Suever*; *Taylor v. Westley*,  402 F.3d 924, 933 (9th Cir. 2005) (*Taylor I*); and *Taylor v. Westley*, 488 F.3d 1197 (9th Cir. 2007) ("*Taylor II*").  The Court's order, entered on October 12, 2007, granted summary judgment to plaintiffs on their claim that the State of California may not constitutionally withhold interest when it returns property to owners under the UPL.   The Court otherwise denied plaintiffs' motion for the various reasons discussed in that order.

• Shortly thereafter, on October 26, 2007, the Court issued an order denying plaintiffs' motion for class certification, which had been heard at the same time as the motion for partial summary judgment.   "Class 2," as described in that motion, would have consisted of persons who have not been or will not be paid interest when their claims were or are paid under the Controller's past, present, or intended future practices.  The Court denied the motion without prejudice to a renewed motion, to be brought and heard upon resolution of various uncertainties identified in that order surrounding the interest issue.  The order expressly stated that the Court would "set a schedule for any further briefing it may determine is appropriate in connection with considering a renewed motion for certification of class 2."

• Finally, in November 2007, the Court denied a request by the Controller for leave to seek reconsideration of the ruling that interest is constitutionally required.  Although the October 26, 2007 order had cited the Controller's intent to seek reconsideration as *one* of the uncertainties that would render class certification premature, the denial of leave to reconsider did nothing to eliminate the other uncertainties discussed in that order.

3

III. DISCUSSION

A. Controller's motion to certify order for interlocutory appeal

   *1. Certification*

   Pursuant to 28 U.S.C. section 1292(b), the Controller requests this Court to certify for interlocutory appeal that portion of the October 12, 2007 order finding that the state must pay interest when returning property to owners under the UPL.  Section 1292(b) provides, in relevant part,

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.  The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order.

   Although this section refers to a court stating the reasons for permitting an interlocutory appeal "in such order," Rule 5(a)(3) of the Federal Rules of Appellate Procedure permits a party to seek certification after an order has issued, by bringing a motion such as the Controller has brought here, for "amendment" of the original order to include a statement that conditions warranting interlocutory appeal are present.

   Under section 1292(b), interlocutory appeal is appropriate where the order at issue concerns (1) a controlling question of law; (2) about which there is substantial ground for difference of opinion; and (3) an immediate appeal may materially advance the ultimate termination of the litigation.  The portion of the October 12, 2007 order regarding interest meets all three of these requirements.   First, the question of whether the state is constitutionally required to pay interest when returning property under the UPL is without doubt a question of law.  The resolution of that question will control the disposition of potentially hundreds of millions of dollars or more presently held in the state treasury.   Second, there is plainly substantial ground for difference of opinion. See, e.g., *Simon v. Wiessman*, 2007 WL 2461707 (E.D. Pa. Aug. 27, 2007) and *Sogg v. Ohio Dept. of Commerce*, 2007 WL 1821306 (Ohio App. 2007) (both reaching conclusions inconsistent with the

United States District Court

For the Northern District of California

-4-

United States District Court
For the Northern District of California

1    October 12, 2007 order).  There appears to be no decision by the Court of Appeals for this circuit

2    addressing this issue.  Third, resolving this question now will only advance, and cannot impede the

3    ultimate termination of the litigation.  The interest issue is distinct and severable from any other

4    issues in this litigation, as evidenced by plaintiffs' efforts to certify a class with respect to only the

5    interest claims. Furthermore, the issue may have the greatest significance or weight in this litigation

6    given the various resolutions of other matters raised herein.

7        Plaintiffs offer no substantive opposition to the argument that this matter qualifies for

8    interlocutory appeal.  Plaintiffs argue only that certifying a class and entering a permanent injunction

9    would facilitate even more efficient appellate review.  Even assuming plaintiffs are correct in the

10   abstract, certification of a class and entry of a permanent injunction cannot be had at this juncture for

11   the reasons discussed in section B below.  Accordingly, the Controller's motion for certification is

12   granted.  The order entered  October 12, 2007 is hereby AMENDED to include the following

13   statement: "The conclusion that the State of California is constitutionally required to pay interest on

14   claims made under the UPL is a controlling question of law about which there is substantial ground

15   for difference of opinion, and an immediate appeal may materially advance the ultimate termination

16   of the litigation."

17

18        *2. "Clarification"*

19        As part of his motion to certify,  the Controller seeks a "clarification."  The Controller asserts

20   that the October 12, 2007 order finding a constitutional entitlement to interest  "apparently

21   determined" that the Eleventh Amendment does not bar claims for past unpaid interest.  The

22   Controller suggests, however, that the Court has not been entirely clear on that point, because the

23   October 27, 2007 order denying class certification stated  "substantial questions exist as to whether

24   the Court even has the jurisdiction to grant the kinds of remedial relief plaintiffs seek."

25        The Controller has overlooked the context in which the statement in the order appeared.

26   That portion of the order involved plaintiffs' request for certification of Class 1, composed of those

27   persons purportedly aggrieved by lack of notice rather than by non-payment of interest, and the

28                                                           -5-

United States District Court

For the Northern District of California

various claims plaintiffs are asserting under that putative class.  Indeed, the existence of those "substantial questions" of jurisdiction led the Court in that same order to direct the Controller to file a dispositive motion within 25 days to resolve the issues of the scope of relief available to putative members of Class 1.

In contrast, the issue of payments of interest to putative members of what is now being called Class 2a, does not raise *any* Eleventh Amendment jurisdictional bar under the reasoning by which the Court concluded such interest was constitutionally required.  The October 12, 2007 order granting partial summary judgment on the issue explained, "[b]ecause the principle itself *at all times remained the property of private individuals* and not the state, *so too did the interest*."  (Emphasis added).  As such, plaintiffs' claims for *return* of that interest, like claims for the return of the principle, fall squarely within the holding of *Suever* that, "[t]he Eleventh Amendment does not bar the class's claims insofar as the claims request the return of the class's property." 439 F.3d at 1146-1147.

### 3. Stay

The final portion of the Controller's motion for certification requests the Court to "stay" its order regarding plaintiffs' entitlement to interest pending a ruling on the issue from the Court of Appeals.  The request for a stay is denied, because there is no provision of any court order that can meaningfully be "stayed."  The October 12, 2007 order reaches a conclusion that the state has always been and still is under a constitutional obligation to pay interest when it pays claims under the UPL.  That constitutional obligation either exists, or it does not, depending on whether the Court's analysis is correct.  The Court, though, cannot "stay" any  constitutional obligation that may exist.  A court *may*, of course, stay any provisions of its own orders that expressly require a party to take particular actions.  Nothing in the Court's October 12, 2007 order, however, requires the Controller to take any particular action at any particular time.  Put another way, even though this Court has concluded that the Controller is constitutionally obliged to pay interest, no order has yet been entered that would require him to do so upon pain of contempt.  Accordingly, there is nothing

1   to be stayed.[2]

2

3   A.  Plaintiffs' motion to amend the class definition, to certify the class as amended, and for entry of
4       permanent injunction

5       Plaintiffs previously sought to certify two classes:  Class 1 consisted of persons making

6   claims that they had not been given constitutionally adequate notice before their property was taken

7   into custody under color of the UPL, and Class 2 consisted of persons claiming the state had failed

8   to pay them constitutionally adequate interest, or any interest at all.  Plaintiffs are not presently

9   seeking to renew their motion to certify Class 1, but they do seek to amend the definition of Class 2

10  to create two subclasses, and then to obtain certification of one of those subclasses.[3]  Specifically,

11  plaintiffs would define Class 2a as consisting of those persons who have reclaimed the principle

12  amount of their property under the UPL but who were paid either no interest or inadequate interest.

13  Class 2b would be persons who have yet to reclaim their property.

14      In  the October 26, 2007, order denying the original motion for class certification, the Court

15  observed that any "injunctive relief requiring payment of interest on *future* claims would inure to the

16  benefit of all putative class members."  Plaintiffs have now embraced that view, and therefore

17  expressly withdraw their request for certification of Class 2b.[4]

18  _____

19      [2]  The Controller has the right to challenge the conclusions of this Court as to what the
20  constitution requires.  Nothing in this order, however, should be seen as an endorsement of any
    delay by the Controller in conforming the conduct of his office to the requirements of the
21  constitution.

22      [3]  As noted above, the Court's October 26, 2007, order provided that the Court would set a
    briefing schedule at an appropriate time to readdress this issue.  The Court understands plaintiffs'
23  desire to keep this matter moving forward, but the better practice would have been to seek leave to
    renew the certification motion before simply filing it.  Nevertheless, in the interest of avoiding delay,
24  the Court will address the merits of plaintiffs' motion.  As will appear, class certification remains
    inappropriate for some of the reasons identified in the prior order.

25      [4]  It might be more technically appropriate simply not to include the persons now defined as
26  Class 2b in the definition of Class 2, than to divide the class into two subclasses and  then
    immediately abandon pursuit of one of them.  Plaintiffs' intent, however, is clear, and the basic
27  notion of not including the persons plaintiffs are now calling 2b in any class that eventually may be
    certified is sound.

28                                              -7-

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

Focusing only on Class 2a, plaintiffs' request for certification remains problematic because of continued uncertainty about the interest rate to be paid. Plaintiffs argue that as a matter of law under the Ninth Circuit precedent of *United States v. $277,000 of United States Currency*, 69 F.3d 1491, 1495-96 (9th Cir. 1995) and *United States v. $133,735.30 Seized From U.S. Bancorp Brokerage Account,* 139 F.3d 729, 731-32, (9th Cir.1998,) the state *must* in all instances pay interest at the rate it would otherwise pay to *borrow* money. The cases on which plaintiffs rely, however, involve situations where the federal government seized property under criminal forfeiture statutes. Plaintiffs have not shown that the holdings of those cases constitutionally preclude a state from legislatively authorizing payment of a rate of interest under its UPL that differs from its cost of borrowing.[5] Without discounting plaintiffs' allegations that California may have been running its UPL as a *de facto* forfeiture program at times in the past, there is no real dispute that to get *principal* property back, claimants have never been required to prove it was wrongfully taken, unlike persons whose property has been seized under criminal forfeiture statutes. A properly structured and run UPL program, moreover, serves very different purposes than a criminal forfeiture statute. Whatever benefits may inure to the state from taking unclaimed property into its possession, property owners may also benefit, because the property may often be safer and easier for owners or heirs to reclaim than if it remained in the hands of a holder.[6]

At most, therefore, the cases plaintiffs cite provide a potential benchmark for determining

---

[5] At an absolute minimum, the latter of the two cases cited by plaintiffs distinguishes the earlier and thereby makes clear there would be no impediment to a state choosing to place UPL funds in a separate interest bearing account and then paying only the actual interest earned on the funds. *See $133,735.30,* 139 F.3d at 731. ( "We agree with the government that *$277,000's* "alternative borrowing rate" has no application where seized funds are deposited in an interest-bearing account. Under these circumstances, the funds "actually" earn interest at the prevailing government rate and there is no need to treat them as "constructively" earning interest at the government's "alternative borrowing rate."). Although that possibility may not be relevant to any claims for past interest, and even assuming it unlikely that the Legislature would elect such a course of action, it serves as an additional reason that plaintiff's request for entry of a permanent injunction must be denied.

[6] Of course, there may be trade offs. For example, if the state takes stock into possession and liquidates it, but the company later does very well, the owner will not reap that benefit. Conversely, if the company goes bankrupt, the owner may be far better off.

-8-

United States District Court

For the Northern District of California

what interest rate should be applied as a *default* rate during any period of time the state was paying

*no* interest.  The "cost of borrowing" does not appear to set a constitutional minimum rate that the

state *must* apply.[7]

As noted in a prior order, it may very well be that a state could set a rate of interest so low as

to be  effectively the payment of no interest at all.  On the present record, there is simply no basis to

determine what those limits might be.  As a result, plaintiffs' motion for class certification remains

premature for at least two related reasons.  First, looking back in time, plaintiffs seek to include in

the class both persons who received *no* interest and those who received *inadequate* interest.  Even if

the Court were prepared to decide that some particular measure of the "cost of borrowing" should

apply during periods that *no* interest was paid, "inadequate interest" remains too amorphous to serve

as part of the class definition, in the absence of a conclusion as to what a minimum rate of interest

should be, or that California ever paid such a rate (other than when it paid no interest at all).

Second, looking forward in time, it is not yet settled as to when the Controller will begin to

pay interest on claims.   Plaintiffs would have the Court remedy that problem by entering a

permanent injunction requiring the payment of interest in the future.  Such an injunction, however, is

not appropriate for all of the reasons expressed above as to why plaintiffs have failed to show that

the constitution requires any particular rate of interest as a minimum.  Until the Controller begins

paying interest on claims, the class that plaintiffs propose to certify is open-ended, and therefore not

suitable for certification.[8]  Accordingly, while plaintiffs' motion to amend the *definition* of Class 2 is

granted, their motion to certify Class 2a is denied, again without prejudice to a further motion upon

any future resolution of the interest rate issues.  The motion for a permanent injunction is similarly

denied without prejudice to renewal upon any resolution of the interest rate question, after resolution

---

[7]  The court expresses no opinion at this time as to how the state's "cost of borrowing" should be calculated or whether or not the measure plaintiffs propose is the correct one.   In the event it becomes appropriate to answer that question, the Court will solicit further briefing and perhaps economic expert opinion.

[8]  Moreover, under plaintiffs' present formulation, the class would remain open-ended even if the Controller began paying interest, were he to do so at any rate less than that advocated by plaintiffs.

-9-

1    of the interlocutory appeal.

2

3    C.  Controller's motion for partial summary judgment

4           1. *Procedural background*

5           The Controller filed his motion for partial summary judgment well in advance of the

6    minimum period (35 days before the hearing) required under the Civil Local Rules. As a result,

7    plaintiffs were in position to, and did, file a motion under Rule 56(f) to continue the summary

8    judgment motion in advance of when their substantive opposition was due, and to set their Rule

9    56(f) motion for hearing on the same day as the Controller's motion.  In addition to that Rule 56(f)

10   request, plaintiffs objected that the Controller's motion sought summary judgment on a substantially

11   broader range of claims and issues than the Court had specifically directed.

12          Then, before their substantive opposition was due, plaintiffs made inquiry to the Court as to

13   the status of their Rule 56(f) motion, apparently expecting it to have been ruled on spontaneously

14   despite it having been set for hearing at the same time as the motion for summary judgment.

15   Plaintiffs were advised that, consistent both with the Court's general practice and with the notice

16   date, the Rule 56(f) motion would be considered  at the same time that the Court took up the merits

17   of the summary judgment motion.  Plaintiffs were further advised that they should file any

18   substantive opposition they might have to the summary judgment motion on the ordinary due date.[9]

19          Plaintiffs elected largely not to oppose the Controller's motion for summary judgment on the

20

_____

21         [9]  In contrast, when the Controller sought a Rule 56(f) continuance to oppose *plaintiffs'*
22   motion for partial summary judgment, he expressly sought expedited consideration of his request.
     Although the Court did continue the hearing by two weeks in connection with the motion for
23   expedited relief, it effectively *denied* the Controllers' attempt to avoid filing a substantive opposition
     until after obtaining a ruling on the merits of the Rule 56(f) continuance.  Thus, there is no
24   substantive difference in how the Court treated the parties' respective Rule 56(f) motions.  In both
     instances, the parties were required to file substantive oppositions before the Court would decide the
25   Rule 56(f) issue.  If anything, plaintiffs received more generous treatment because they were given
     additional time to file substantive opposition even after appearing at the hearing.  In the Court's
26   view, Rule 56(f) only provides a party opposing summary judgment an *alternative* argument by
     which to oppose entry of judgment.  The party must offer any *substantive* opposition (or admit there
27   is none to offer) and then request a continuance, should the Court find that substantive opposition
     wanting.

28
                                                    -10-

merits.  Instead, on the day that the opposition was due, they filed a 3 and one-half page brief that (1) restated their objections to the fact that the Controller's motion is broader in scope than the Court directed, and (2) incorporated by reference their  Rule 56 (f) motion.  The brief concluded by stating, "[i]n the alternative, Plaintiffs request the opportunity to submit an opposition to the Motion for Partial Summary Judgment as this Court may direct." At the hearing, the Court exercised its discretion to permit plaintiffs to file a substantive opposition.  Briefing on the merits was finally completed at the end of February, 2008.

2. *Relief related to alleged failure to provide constitutional notice*

The order denying class certification provided: "Within 25 days of the date of this order, defendants shall file a dispositive motion seeking an adjudication of whether plaintiffs may pursue: (a) non-monetary remedial relief based on the alleged past failure of the Controller to comply with constitutional due process requirements prior to taking possession of property under color of the UPL, or (b) monetary relief, whether denominated as "restitution" or otherwise, for the same alleged wrongs."

The Controller's motion asserts that, apart from a potential right to an injunction requiring him to conform to constitutional due process in the future, as a matter of law plaintiffs may obtain no other remedies arising from any past failures by the Controller to comply with the constitution when taking possession of property under color of the UPL.  Plaintiffs' disagreement with that proposition is two-fold:  First, and perhaps most significantly, plaintiffs insist that they are entitled to recover the "value"of non-cash property taken into custody under color of the UPL without regard to the actual sums the Controller obtained when such property was liquidated.  Thus, for example,  plaintiffs contend that under the rubric of "restitution," a person reclaiming stock that "escheated" under the UPL may obtain the current value of that stock, rather than the dollar amount (plus interest) that the Controller received when the stock was sold after he took possession of it.  Second, plaintiffs appear to be contending that the state may still be compelled to undertake additional efforts with respect to notifying persons whose rights were violated in the past.

-11-

Plaintiffs' contention that they may be entitled to recover something beyond the actual cash proceeds (plus interest) that the Controller realized when liquidating non-cash property is based on a misreading of *Suever*, *Taylor I*, *Taylor II*, and other precedents. *Taylor I* and *Suever* both unambiguously held that the Eleventh Amendment is no bar to any claim by plaintiffs for return of their own property–such claims simply are not claims for "damages" against the state. Nothing in those opinions, however, supports plaintiffs' arguments that they are entitled to *more* than the actual property the state took into possession (plus interest) or the *proceeds* of that property (again, plus interest) where it was non-cash property that was liquidated. Indeed, a passage plaintiffs quote from *Taylor I* supports exactly the opposite conclusion: "Eleventh Amendment immunity from suit against [the state] for damages payable from its treasury has no application to escheated property and *sales proceeds from escheated property*." *Taylor I*, 402 F.3d at 932 (emphasis added).

Plaintiffs place emphasis on the fact that in finding the *Taylor I* plaintiffs to have alleged viable claims, the Ninth Circuit distinguished *Papasan v. Allain*, 478 U.S. 265 (1986), which held the Eleventh Amendment to bar recovery from a state where the "corpus of the trust was gone with the wind." See *Taylor I*, 402 F.3d at 932. The *Taylor I*, court, however, held only that the allegations of the *Taylor* complaint were sufficient to show that in these UPL cases, "the corpus still exists and is available for return." *Id.* While that proposition is not subject to material dispute with respect to cash or the cash proceeds of property taken under color of the UPL, where non-cash property has been liquidated, anything in excess of those proceeds is "gone with the wind" and not available for return.[10] *Taylor I* does not suggest otherwise; rather, it is clear in context that when the *Taylor I* court stated the "corpus still exists," it was speaking only of the cash and cash proceeds of property taken into custody under color of the UPL.

---

[10] Plaintiffs in this case and in *Taylor* have attempted to characterize the effect of the state's conduct as resulting in significant losses of increased stock value they would have realized had the property not been liquidated under color of the UPL. It may very well be that some of these particular plaintiffs would have done better had the stock not been taken into custody, given what happened to the value of those shares. The implication, however, that the *state* somehow appropriated to itself that increased value, is not supported by the record. Additionally, the implication that the state should *never* liquidate stock or other non-cash property taken into custody under the UPL is not supported by law or logic.

-12-

United States District Court

For the Northern District of California

Accordingly, the Controller's motion for partial summary judgment is granted with respect to any claims by plaintiffs for "restitution" or other monetary recovery in excess of, or in addition to, return of (1) the principal amount of any cash taken into custody under color of the UPL, (2) the principal amount of any proceeds derived from non-cash property taken into custody under color of the UPL, and (3) interest on such cash or cash proceeds.[11]

As to plaintiffs' assertion that they may be entitled to some form of remedial measures to compensate for past failures to give constitutional notice, the Court declines to rule as a matter of law either that such relief is available or that it is not.  At this point, plaintiffs have failed to identify with sufficient specificity any such relief they may be seeking, but that does not necessarily preclude them from doing so in the future.  The viability of any such requested relief may, as the Controller argues, turn on whether there is a basis for other prospective injunctive relief.  That, in turn, may depend on developments in the litigation in the Eastern District of California, to which this Court likely will defer, as discussed further below.

In sum, plaintiffs may not recover anything more than the cash or the cash proceeds of any property taken into custody under color of the UPL, plus interest thereon.  Whether plaintiff may obtain injunctive relief requiring the Controller to engage in efforts to remediate the effects of his alleged past failures to comply with constitutional requirements, remains to be decided.

3.  *The balance of the Controller's motion*

In addition to the matters as to which  the Court directed the Controller to seek summary judgment, his motion seeks (a) a determination that the UPL, as amended by Senate Bill 86, is now constitutional; (b) a determination that the statute of limitations bars plaintiffs' claims; (c) judgment in favor of  former controller Steve Westley, (d) judgment in defendant's favor on all "state law"claims, and (e) judgment in the Controller's  favor on the  taxpayer claims.

---

[11]  None of the discovery that plaintiffs contend  they need to take has any bearing on this purely legal issue.  Accordingly, their request for a continuance under Ruler 56(f) is denied.

-13-

a. *Constitutionality of UPL as amended*

The Controller requests a ruling that, as a matter of law, the state's UPL as amended by S.B. 86 meets constitutional muster. As a procedural matter, it is not entirely clear that the Court could even issue such a ruling–no declaratory relief claim by the Controller is before the Court. Even assuming, however, that the constitutionality of the amended UPL is adjudicatable in this action given plaintiffs' allegations that the state has violated their constitutional rights, the Court agrees with plaintiffs that concerns of judicial efficiency and comity weigh against deciding the issue at this juncture. Whether or not the issue has been addressed "on the merits" in the Eastern District, the adequacy of the amended UPL has been adjudicated by that court and is currently on appeal before the Ninth Circuit. Any decision by this Court would only create unnecessary procedural complications. Accordingly, this prong of the Controller's motion is denied, without prejudice.

b. *Statute of limitations[12]*

The Controller contends that claims of all the named plaintiffs are barred by the applicable statute of limitations because they knew their property had escheated long before this action was filed. Were plaintiffs otherwise entitled to seek *damages* in this action, the statute of limitations might present an additional barrier. The Controller has failed to show, however, that the statute of limitations serves to preclude plaintiffs from obtaining remedies for what they contend are, in effect, continuing constitutional violations. Accordingly, this prong of the Controller's motion is denied.

c. *Steve Westley*

The Controller seeks dismissal of Steve Westley on the same grounds that the order on the motion for judgment on the pleadings dismissed individual defendants who were no longer in office. The nature of the claims against any of the individual defendants in this action has been a matter of

---

[12] Some of the discovery that plaintiffs seek arguably might affect questions related to the statute of limitations. Because the Court is denying the portion of the Controller's motion related to the statute of limitations, however, no continuance under Rule 56(f) is necessary.

-14-

some uncertainty and dispute from the outset.  Nominally, each individual defendant has always

been named in his or her "individual and official" capacity.  "Individual" capacity can, however,

refer to two somewhat different concepts.  First, a state official may be named in an "individual"

capacity to trigger application of what the *Taylor I* court referred to as the  "*Lee-Malone* exception

to sovereign immunity." *Taylor I*, 402 F.3d at 934  (referring to *United States v. Lee*, 106 U.S. 196

(1882) and *Malone v. Bowdoin*, 369 U.S. 643 (1962)).  Under that line of cases,  "the action of a

federal officer affecting property claimed by a plaintiff can be made the basis of a suit for specific

relief against the officer *as an individual* only if the officer's action is  not within the officer's

statutory powers or, if within those powers, only if the powers, or their exercise in the particular

case, are constitutionally void."       *Malone*, 369 U.S. at 647 (emphasis added).[13]

As noted, *Lee-Malone* creates an exception to *sovereign immunity*, originally in the federal

context, but now extended to state sovereign immunity as well.  By largely overlapping or parallel

reasoning, the so-called "*Ex Parte Young* doctrine" creates a similar exception to immunity from suit

in federal court that a state official might otherwise enjoy under the Eleventh Amendment.  Under

*Ex parte Young,* a state official who acts unconstitutionally is "stripped of his official or

representative character and is subjected *in his person* to the consequences of his individual

conduct." *Ex Parte Young*,  209 U.S. 123, 160 (1908) (emphasis added).   The scope of the *Ex Parte

Young* exception has since been limited  to claims for prospective equitable relief and state funds

"ancillary" to such relief;  the Eleventh Amendment bars retroactive compensation to plaintiffs from

state funds.  *Edelman v. Jordan*, 415 U.S. 651, 663-69 (1974) 94 S.Ct. 1347.

Thus, both *Lee-Malone* and *Ex Parte Young*, rely on the fact that a governmental official is

sued in his or her *individual* capacity to create exceptions from immunities that would apply if the

---

[13]  Although *Lee* and *Malone* both involved *federal* sovereign immunity, the principle is
equally applicable to *state* sovereign immunity. *Taylor I*, 402 F.3d at 933.  It is not entirely clear,
however, how to reconcile the *Taylor I* court's discussion of the *Lee-Malone* rules regarding a
governmental officer's liablity to suit in an *individual* capacity with the fact that the *Taylor I*
plaintiffs had not named the Controller in an individual capacity.  See *Taylor I*, 402 F.3d at 930 n.20.
No such difficulty appears here where the Controller and other defendants have been named in both
official and personal capacities.

-15-

official were seen merely as a surrogate for the state itself.  The kinds of recovery that can be had, however, are extremely limited under either doctrine, because ultimately the recovery *is* coming from the state itself.

A state official can be sued in his or her "individual" or "personal" capacity in a very different sense, however, when a plaintiff can assert a claim that would warrant the official paying damages from his or her own pocket, rather than from the coffers of the state.  Thus, for example, a plaintiff may pursue a claim under 42 U.S.C. § 1983 against a state official seeking to impose *personal* liability on that official.  To succeed on the merits in such a suit, the plaintiff need show only that "the official, acting under color of state law, caused the deprivation of a federal right." *Hafer v. Melo*, 502 U.S. 21, 25 (1991).  Such a claim simply does not implicate the Eleventh Amendment or sovereign immunity at all, because it truly is a claim against the individual, and not the state.  *Id.* at 30.  Furthermore, liability in such cases does not turn on whether the state official acted within his or her authority or outside it, the only question is whether the conduct was undertaken under color of state law.  *Id* at 28.

Here, both the very first order granting dismissal of this action with leave to amend, entered in June of 2003, and the subsequent order issued in November of 2003, dismissing without leave to amend, considered in some detail whether the complaint could be fairly read as asserting any claims against the individual defendants in the sense discussed in *Hafer v. Melo*.  The orders respectively concluded that neither the original complaint nor the amended complaint state any such claims, for the reasons stated therein.

Plaintiffs appealed the resulting judgment.  The record before this court does not reflect whether in the course of that appeal plaintiffs challenged the conclusion that the complaint failed to allege personal liability in the *Hafer v. Melo* sense.  Nothing in the *Suever* opinion, however, states or even implies that the conclusion was erroneous.[14]

Accordingly, in ruling on the motion for judgment on the pleadings, the Court found that

---

[14]  The *Taylor* opinions shed no light on this issue because no personal capacity allegations were made in that case at all.  See *Taylor I*, 402 F.3d at 930 n.20.

-16-

even though there are "individual" claims against *present* office holders for *prospective injunctive relief* (under *Ex Parte Young*) and for an injunction requiring that plaintiffs' own property be returned to them (under *Lee-Malone*), no claim for damages against individual defendants had been adequately pleaded, for the reasons set out in the original dismissal orders.  As a result, dismissal of *former* office holders was found to be appropriate, because they were not persons to whom any of the available injunctive relief would apply.  By that same logic, former Controller Steve Westley must now be dismissed as well.[15]

#### d.  *State claims*

The Controller seeks summary judgment in his favor on all claims sounding in state law, on grounds that *Suever* held the Eleventh Amendment "clearly" to bar any relief  "premised solely on the State's compliance with state law." *Suever*, 439 F.3d at 1148.  The Controller previously sought judgment on the pleadings with respect to such claims.  The Court observed that any claims based solely on state law are indeed barred, but noted that allegations regarding the Controller's compliance with state law might not be wholly irrelevant, for reasons explained in that order.  The Court therefore "decline[d]  to rule that any of the particular numbered "claims for relief" are necessarily wholly barred."

Plaintiffs take no issue with the Controller's assertion that claims based wholly on state law are barred, nor do they challenge the accuracy of  his identification of the  specific claims for relief, paragraphs of the complaint, and portions of the prayer that fall into that category.  Instead, plaintiffs merely argue that this portion of the motion is an unauthorized request for reconsideration of the ruling on the motion for judgment on the pleadings, and that the Controller has offered no new facts or law to support reconsideration.

---

[15]  Plaintiffs' arguments that something could be improper given Westley's relationship to eBay and the fact that the Controller's office allegedly used eBay to liquidate property taken under color of the UPL is unavailing.  Not only are these allegations unpleaded, but even if they had been, they would suffer from the same defects identified in the original dismissal orders: namely that there is nothing to tie the purported wrongdoing to any violation of individual plaintiffs' constitutional rights.

-17-

United States District Court

For the Northern District of California

1          The Court disagrees.  The ruling on this aspect of the  motion for judgment on the pleadings

2   was largely procedural–the Controller had not sufficiently identified which portions of the complaint

3   would be affected by the relief he sought.  Now, under a different procedural vehicle that he was

4   entitled to utilize, he has done so.   Accordingly, summary judgment will be granted in the

5   Controller's favor with respect to (1) the fifth claim for violation of the UPL (First Am. Compl., ¶¶

6   110-113); (2) the sixth claim for breach of fiduciary duty (*id.*, ¶¶ 114-120); (3) the seventh claim for

7   negligence (*id.*, ¶¶ 121-124); (4) the eighth claim for fraud (*id.*, ¶¶ 125-135); (5) claims alleging that

8   the State allows companies to retain property belonging to the State (*id.*, ¶¶ 92(h), 95(h), Prayer for

9   Relief ¶ 2(h)); and (6) claims alleging violations of California's "Blue Sky Laws," (*id.*, ¶¶ 92(l),

10   95(l), Prayer for Relief, ¶ 9 (l)).

11

12          e.  *Taxpayer claims*

13          The Controller seeks to dismiss the claims of plaintiff Tony Lee, who sues only as a

14   "taxpayer"–i.e., he does not allege that any of his property has been taken under color of the UPL.

15   The Controller also seeks dismissal of certain portions of the complaint that *other* plaintiffs assert

16   only in their status as "taxpayers".  Again, plaintiffs offer no substantive opposition; they merely

17   argue that the Court declined to dismiss these claims in the motion for judgment on the pleadings.

18          The motion for judgment on the pleadings sought dismissal for lack of standing of "many"

19   aspects of the *state* claims made by all the plaintiffs and also sought dismissal of Lee entirely. The

20   motion failed to identify with any specificity the "many" state law claims to which the Controller

21   believed the argument applied.  Because the Court ruled that state claims were *not* viable (although

22   declining to strike any particular numbered claims or paragraphs), it concluded it need not reach the

23   taxpayer standing arguments with respect to any of the plaintiffs including Lee.[16]

24          In the present motion, the Controller seeks summary judgment as to paragraphs 92(h) and

25

26          ─────────────

27          [16]  Because the Controller had not mentioned any federal claims, the assumption was either
that Lee was not party to those claims or that the Controller was not seeking his dismissal from those
claims notwithstanding the request to dismiss him entirely.

28

95(h) (claims relating to an alleged practice of allowing certain companies to retain property that allegedly is subject to escheat); paragraphs 92(j) and 95(j) (claims relating to practices for handling safe deposit boxes); and the associated subparagraphs (j) and (h) of the second paragraph of the prayer for relief.  This portion of the motion is granted.  Plaintiffs have failed even to allege, much less to show, that they have suffered direct injury sufficient to give them standing under Article III to pursue these claims in federal court.  See *Cantrell v. City of Long Beach*, 241 F.3d 674, 683-84 (9th Cir. 2001) ("California's lenient taxpayer standing requirements do not relieve [plaintiffs] of the obligation to establish a direct injury under the more stringent federal requirements" requiring "a direct pocketbook injury." (citation omitted)).

D.  Plaintiffs' motion to compel

Plaintiffs' motion to compel further discovery responses presents a number of strongly competing interests.  Plaintiffs have propounded a variety of discovery requests that undisputedly relate, at least to some degree, to one or more of plaintiffs' theories of liability.  The Controller has objected to the discovery on a variety of grounds, but a central point of controversy arises from the parties' divergent views as to what claims remain viable in this action.  In particular, the Controller has resisted providing any discovery responses going to *past* practices of his office, based on his argument that the Eleventh Amendment, the *Suever* opinion, and the Court's November 2006 order on the motion for judgment on the pleadings, all preclude such inquiry.

Plaintiffs are correct that, as a general rule, a party may not resist discovery relating to a particular claim by arguing that the claim lacks merit.  As the Controller points out, however, " the value to the States of their Eleventh Amendment immunity . . . is for the most part lost as litigation proceeds past motion practice."  *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 145 (1993).  While the Controller is necessarily embroiled in this litigation past the motion practice stage because plaintiffs have stated claims outside the Eleventh Amendment, he is still entitled to the benefit of the Eleventh Amendment with respect to responding to claims within its ambit.

-19-

1    The particular discovery requests in dispute in  this motion were propounded prior to the

2  time that several substantive orders issued that gave shape to the legal and factual questions that

3  remain.  Thus, even assuming the requests were all reasonably calculated to lead to the discovery of

4  admissible evidence when originally served, the question now is whether further responses should be

5  compelled in light of the issues that remain to be resolved.

6    It is not immediately apparent how *any* of the proposed discovery would further resolution of

7  the remaining issues in this action.  That said, plaintiffs have the right to conduct discovery

8  "reasonably calculated to lead to the discovery of admissible evidence" within the proportionality

9  and other requirements of Rule 26 of the Federal Rules of Civil Procedure.

10    In light of the substantive orders that have issued since the discovery requests were

11  propounded, the parties are hereby ordered to engage in further meet and confer negotiations

12  regarding the extent to which, if at all, the Controller should provide further discovery responses

13  during the pendency of such interlocutory appeal as the Ninth Circuit may entertain.[17]  In conducting

14  such meet and confer negotiations, the parties should consider the following:

15    1.  The Controller's objections that terms such as "account" are ambiguous are not

16  persuasive.  To the extent  a term arguably is ambiguous, a party should answer fully based on its

17  expressed understanding of the term, or endeavor through the meet and confer process to reach an

18  agreed definition of the term.

19    2.  The Controller's objection to providing detailed discovery, or responses to requests for

20  admissions, regarding the general practices of his office in the past are, for the most part, well-taken.

21  That said, the fact that a particular discovery request may implicate some historical fact should not

22  serve as a blanket excuse for refusing to respond to the request at all.  Additionally, the named

23  plaintiffs may properly propound discovery inquiring into how their particular property, or alleged

24

25    [17]  Plaintiffs may be correct that a party has a right to file a motion to compel when it
believes that meet and confer negotiations are not fruitful.  As the Court regularly admonishes
26  parties, however, the obligation to meet and confer is not terminated by the filing of a motion.  If the
briefing reveals areas of potential compromise, or if other continuing events warrant it, parties
27  should continue to seek to narrow or resolve their disputes even after a motion has been filed.

28

-20-

property, was handled and processed by the Controller.

3. Plaintiffs should bear in mind that requests for admissions are not intended as discovery devices *per se.* "The purpose of Rule 36(a) is to expedite trial by establishing certain material facts as true and thus narrowing the range of issues for trial." *Asea, Inc. v. Southern Pacific Transp. Co.*, 669 F.2d 1242, 1245 (9th Cir. 1981). The rule is not intended as a discovery tool but instead presupposes that the party propounding the requests knows the facts set forth or possesses the documents about which the party seeks a concession of genuineness. *Safeco Ins. Co. of Am. v. Rawstron*, 181 F.R.D. 441, 445 (C.D. Cal. 1998). Particularly in light of the matters that have been resolved through motion practice, many of the requests for admissions propounded by plaintiffs are no longer relevant.

These further meet and confer negotiations shall take place face to face, in a meeting to be scheduled within 20 days of the date of this order. Upon conclusion of the negotiations, plaintiffs may file a brief not to exceed five pages that lists by number each of the discovery requests or requests for admission that they contend still require further responses. The brief may describe the extent to which any such request has been narrowed by agreement, but shall not otherwise contain any argument. Within five days of the date plaintiffs file any such brief, the Controller may file a response, also not to exceed five pages, in the event he disagrees as to which requests remain in dispute. The Controller may identify the requests he believes to be in dispute, but the response shall not otherwise contain any argument. The Court will then take the matter under submission and issue a ruling.

E. The Controller's motion for a protective order and to disqualify counsel

The Controller contends that plaintiffs have improperly come into possession of, and used, three documents as to which the Controller or State Attorney General's office assert a claim of privilege. Plaintiffs dispute that the documents were privileged in the first instance, but also argue that any privilege has long since been waived by the fact that these documents have received wide

-21-

public dissemination, through the efforts of persons other than plaintiffs and their counsel.

The Controller responds, in essence, that the actions of a "thief" in obtaining and sharing a privileged document do not serve to waive the privilege.  The Controller may be correct that a document does not lose its privileged status simply because some unauthorized person has been privy to its contents and perhaps shared those contents with at least some other persons.  Here, however, plaintiffs have shown that the two older documents in dispute  have been widely circulated in public over a period of years.  While it may not have been the intent of state officials to allow that to happen, their failure to take action that would preserve the confidentiality of those documents serves to waive any privilege that might otherwise have  existed.  As to the most recent document–an email dating from November, 2007, not only has the Controller failed to show the document was privileged in the first instance, it also appears  to have been widely and publicly circulated, including having been the subject of news reports.

Accordingly, the Controllers' motion seeking to sanction plaintiffs' counsel and to prohibit further use of these documents is denied.  As the above analysis reflects, however, none of the documents is *relevant* to any of the issues decided in these motions, and the Court has disregarded them.

1

IV. CONCLUSION

2          The Controller's motion to certify this Court's order entered on October 12, 2007 for

3   interlocutory appeal is granted.  That order is hereby amended to include the requisite language

4   under

5   28 U.S.C. section 1292(b), as set out above.  The Controller's motion for partial summary judgment

6   is granted to the extent set out above.  Plaintiffs' motion to amend the definitions of the putative

7   Class 2 is granted.  The parties are directed to engage in further meet and confer negotiations

8   regarding their discovery disputes, as described in more detail above.  The pending motions are

9   otherwise denied.

10

11  IT IS SO ORDERED.

12  Dated: April 1, 2008

13                                                RICHARD SEEBORG
                                                  United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  ORDER
    C 03-00156 RS

23

United States District Court
For the Northern District of California